## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN WILCOX,

      Plaintiff,

vs.

                                        No. 1:23-cv-1165 MIS/DLM

ALISHA TAFOYA LUCERO, Secretary of
Corrections, *et al.*,

      Defendants.

## OMNIBUS ORDER

THIS MATTER is before the Court on Plaintiff John Wilcox's Prisoner's Civil Rights Complaint, ECF No. 1 ("Complaint"), and Amended Complaint, ECF No. 11.[1]  Plaintiff is incarcerated, proceeding *pro se*, and paid the required filing fee on September 30, 2024.  ECF No. 9.  Plaintiff has also filed the following motions: Motion to Correct Case Number, ECF No.5; Motion for Extension of Payment, ECF No. 6; Motion Regarding Filing Fee, ECF No. 7; and Motion for Leave to File Amended Complaint, ECF No. 11.  Having reviewed Plaintiff's claims and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss Plaintiff's claims and grant him leave to file a second amended complaint.

### I.    Pending Motions

Plaintiff has filed a Motion to Correct Case Number ECF No. 5, Motion for Extension of Payment ECF No. 6, Motion Regarding Filing Fee ECF No. 7, and Motion for Leave to File an

---

[1]      Plaintiff initially filed the Complaint in Case No. 22cv570 WJ/KBM as a belated, post-judgment pleading in response to the Court's Memorandum Opinion and Order granting Plaintiff leave to file an amended complaint that complies with Fed. R. Civ. P. 8(a).  *See* ECF Nos. 17 and 22, filed in Case No. 22cv570.  Plaintiff's amended complaint was due by December 1, 2023, and the Court dismissed Case No. 22cv570 without prejudice on December 8, 2023.  ECF Nos. 20 and 21, filed in Case No. 22cv570.  When Plaintiff filed the pleading on December 15, 2023, the Court directed the Clerk's Office to open this case—Case No. 23cv1165—using the amended complaint as the initial pleading.  *See* ECF No. 26, filed in Case No. 22cv570.

Amended Complaint ECF No. 11.  Because Plaintiff has paid the filing fee, the Court finds Docket

Entries 6 and 7 are moot.

In Plaintiff's Motion to Correct Case Number, Plaintiff asks the Court to change the case

number on an amended complaint he filed in Case No. 22cv570 on February 14, 2024.  ECF No.

5 (referring to ECF No. 27, filed in Case No. 22cv570).  He asks to change the case number on

that document to this case.  Because Plaintiff filed another amended complaint in this case on

November 14, 2024, ECF No. 11, the Court finds the Motion to Correct Case Number, ECF No.

5, is also moot.

Plaintiff also filed a Motion to Amend, which includes a proposed Amended Complaint.

ECF No. 11.  Plaintiff states he "has made corrections by adding a defendant and removing a

defendant, and making changes in his claims."  *Id.* at 1.  The Court grants Plaintiff's Motion to

Amend and conducts an initial review of the claims raised in the Amended Complaint at ECF No.

11, pages 2-54, below.

## II.    Background

The Amended Complaint consists of fifty-four mostly handwritten pages, brings claims

against twenty-one Defendants, and raises thirteen claims.  ECF No. 11.  Plaintiff's claims are

difficult to discern, but he mainly appears to challenge prison officials' actions regarding: (1) his

transfer to a higher security level prison; (2) the manner in which he was transported to and from

the prison; and (3) the handling of newsletters, books, and legal mail.  Plaintiff alleges, *inter alia*,

that Defendants: retaliated against him; conspired to violate his rights; impeded his access to the

courts; violated his due process and equal protection rights; and violated the First and Eighth

Amendments, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the New

Mexico Inspection of Public Records Act ("IPRA").  Specifically, Plaintiff brings the following claims:

Claim 1:  Two Defendants retaliated against Plaintiff for filing frequent inmate grievances by delaying approval of Plaintiff's son's application for visitation.  ECF No. 11 at 24-25.

Claim 2:  Defendant Sanchez violated Plaintiff's Eighth Amendment rights by yelling at him and potentially exposing him to the Covid-19 virus.  *Id.* at 25-26.

Claim 3:  Four Defendants retaliated against Plaintiff, violated Plaintiff's due process and equal protection rights, and violated the ADA and Rehabilitation Act, by having Plaintiff reclassified from a Level II to a Level III prison, after he filed a grievance regarding the events in Claim 2.  *Id.* at 26-29.

Claim 4:  Four Defendants violated Plaintiff's Eighth Amendment rights by transferring him to the Level III prison while he was experiencing medical issues.  *Id.* at 29-31.

Claim 5:  Eight Defendants violated Plaintiff's due process rights and the New Mexico IPRA by failing to provide Plaintiff a copy of his transfer document.  *Id.* at 32-34.

Claim 6:  Three Defendants conspired to transfer Plaintiff from the Level II to the Level III prison based on other inmates making false allegations against Plaintiff.  *Id.* at 34-37.

Claim 7:  Three Defendants violated Plaintiff's Eighth Amendment rights and the ADA by failing to train New Mexico Corrections Department ("NMCD") employees in proper transport of inmates, and violated Plaintiff's due process rights by failing to allow Plaintiff to exhaust his administrative remedies regarding this claim.  *Id.* at 37-40.

Claim 8:  Two Defendants violated Plaintiff's Eighth Amendment rights by failing to respond to Plaintiff's requests to clean the quarantine cell he was placed in upon return to the Level II prison and failing to provide Plaintiff with his medications.  *Id.* at 41-42.

Claim 9:  Five Defendants violated Plaintiff's rights under the First Amendment by rejecting delivery of a copy of a religious newsletter.  *Id.* at 42-44.

Claim 10:  Seven Defendants violated Plaintiff's First and Fourteenth amendment rights by enforcing NMCD policy regarding access of books, magazines, and newspapers through a digital mail service.  *Id.* at 44-47.

Claim 11:  Three Defendants violated Plaintiff's First and Fourteenth Amendment rights by opening his legal mail.  *Id.* at 47-48.

Claim 12:  Four Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights and the ADA by housing Plaintiff in a dormitory that was noisy and where the other inmates used drugs and smoked.  *Id.* at 48-51.

Claim 13:  Three Defendants impeded Plaintiff's access to the courts by failing to provide accessible photocopying services or a legal access coordinator.  *Id.* at 51-53.

### III.    Standards Governing Initial Review of Prisoner Complaints

Under the Prison Reform Litigation Act ("PLRA"), federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a government entity or officer.  *See* 28 U.S.C. § 1915A(a).  The Court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1).  The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted).  To avoid dismissal for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief about the speculative level."  *Bell Atl.*

*v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  A court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff.  *Id.* at 555.  However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed.  *Id.* at 558.

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall,* 935 F.2d at 1110.  While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements."  *Id.* Nevertheless, it is not the "proper function of the district court to assume the role of advocate for the *pro se* litigant."  *Id.*

Under these standards, the Amended Complaint does not survive initial review for several reasons, as set forth below.

### A.  Fed. R. Civ. P. 8(a)

Rule 8 requires a short and plain statement of the grounds for relief, and "[i]t is not the role of … the court … to sort through a lengthy … complaint and voluminous exhibits … to construct plaintiff's causes of action."  *McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014) (citations omitted).  Moreover, plaintiffs are not permitted to file "kitchen-sink" or "shotgun" pleadings, which "bring[] every conceivable claim against every conceivable defendant."  *D.J. Young Pub. Co., LLC ex rel. Young v. Unified Gov't of Wyandotte*, Civil Action No. 12–CV–2011– KHV, 2012 WL 4211669, at *3 (D. Kan. Sept. 18, 2012); *see also Glenn v. First Nat. Bank in*

*Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading."). Shotgun pleadings are "pernicious" because they "unfairly burden defendants and courts" by shifting onto them "the burden of identifying plaintiff's genuine claims and determining which of those claims might have legal support." *D.J. Young*, 2012 WL 4211669, at *3; *see also Pola v. Utah*, 458 F. App'x. 760, 762 (10th Cir. 2012) (affirming dismissal of a complaint that was "incoherent, rambling, and include[d] everything but the kitchen sink").

Here, Plaintiff's Amended Complaint contains fifty-four mostly handwritten pages, brings claims against twenty-one Defendants, and raises thirteen claims, each alleging multiple constitutional and statutory violations. The claims are presented in a narrative form where Plaintiff discusses numerous Defendants and constitutional and statutory violations throughout each claim. For example, Claim 3 appears to assert retaliation, due process, equal protection, and ADA violations against four Defendants, but does not clarify which cause of action is asserted against which Defendant, or what each Defendant did that constitutes a violation of each asserted claim. *See* ECF No. 11 at 26-29. Most of Plaintiff's other claims are similarly deficient. Accordingly, the Amended Complaint does not comply with Fed. R. Civ. P. 8(a). *See McNamara*, 570 F. App'x at 743 (Allowing such pleadings to survive screening "would force the Defendants to carefully comb through" a pleading "to ascertain which … pertinent allegations to which a response is warranted.").

### B. Failure to State a Claim Under 42 U.S.C. § 1983

To the extent some claims are discernable, Plaintiff also fails to state a claim under 42 U.S.C. § 1983. "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trs.*, 215 F.3d 1168, 1172 (10th

Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046. In addition, "a successful § 1983 complaint must make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original).

### 1. Failure to Allege Personal Involvement

Most of Plaintiff's claims do not specify how each defendant was involved in the alleged wrongdoing. For example, as noted above, in Claim 3 Plaintiff asserts retaliation, due process, equal protection, and ADA violations against four Defendants, but does not clarify which violation is asserted against which Defendant. ECF No. 11 at 26-29. Similarly, Claim 4 asserts Eighth Amendment and due process violations against four Defendants but does not state what each Defendant allegedly did to incur liability. Such claims do not provide fair notice of the basis of the claims against each Defendant. *See Baker v. City of Loveland*, 2017 WL 1485006, *1 (10th Cir. Apr. 26, 2017) (A complaint is inadequate if it "lacks clarity about what each defendant allegedly did to incur liability.").

In addition, many of Plaintiff's claims appear to be based solely on supervisory status. For example, in Claim 3 Plaintiff alleges Defendant Salazar is liable because she "had the authority to investigate the reason" Plaintiff was transferred, and in Claim 7 Plaintiff alleges Defendant Tafoya Lucero is liable because she "is the person of authority over the [NMCD] and is responsible for ensuring the NMCD Administrative and Security Staff is properly trained." ECF No. 11 at 28, 39.

"[A] defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty*, 523 F.3d at 1162. Consequently, Plaintiff's claims against any Defendant solely in their supervisory capacity, such as affirmance of prison grievances or classification decisions, or bald assertions that a Defendant "allowed" or "approved" of an action by a subordinate, are not sufficient to show the Defendant's personal participation in the challenged acts. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (to plead supervisor's liability, plaintiff must show he or she personally directed alleged offensive conduct or knew plaintiff's rights were being violated but did not prevent it); *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992).

### 2. Claims Regarding Grievance Procedures

Plaintiff also appears to raise several claims based on violation of NMCD policies pertaining to grievance procedures. *See, e.g.*, ECF No. 11 at 32 (Claim 5, alleging Defendant Rivera did not forward a grievance appeal); *id.* at 39 (Claim 7, alleging Defendant Duran incorrectly marked one of Plaintiff's informal complaints "resolved" and failed to provide Plaintiff with a copy, and Defendants Fairman and Duran did not allow Plaintiff to exhaust his administrative remedies). Alleged violations of prison regulations are not cognizable under § 1983. *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002); *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (prison regulations and administrative policies are not intended "to confer rights on inmates"); *Anderson v. Colo. Dep't of Corr.*, 185 F.3d 873, 1999 WL 387163, at *2 (10th Cir. 1999) (unpublished table decision) (prisoner's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does

not equate to a constitutional violation.").  Plaintiff therefore cannot maintain a constitutional claim against Defendants for mishandling their grievance procedures.

### 3. Retaliation Claims

In Claim 1, Plaintiff alleges Defendants Sanchez and De Herrera denied Plaintiff's son's application for visitation "due to the Plaintiff filing several NMCD Informal Complaints/ Grievances."  ECF No. 11 at 24.  In Claim 3, Plaintiff alleges Defendants Sanchez, De Herrera, Austin, and Salazar requested to have Plaintiff transferred to a higher security level prison in retaliation for Plaintiff filing a grievance against Sanchez.  *Id.* at 27.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quotation omitted).  "Nor may prison officials retaliate against prisoners for filing administrative grievances."  *Leek v. Miller*, 698 F. App'x 922, 925 (10th Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)).  To state a retaliation claim against a government official, a plaintiff must prove three elements: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant responded by causing an injury that "would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's constitutionally protected activity.  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *Rhodes v. Shannon*, 2024 WL 79964, at *3 (10th Cir. Jan. 8, 2024).

Here, Plaintiff does not allege any facts showing that his protected activity substantially motivated the Defendants' actions.  To show "substantial motivation," Plaintiff must "allege *specific* facts that, if credited, establish that 'but for' the defendant's improper retaliatory motive 'the incidents to which [Plaintiff] refers ... would not have taken place.'"  *Allen v. Avance*, 491 F.

App'x 1, 6 (10th Cir. 2012) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's allegations of a retaliatory motive are conclusory and insufficient to state a claim. *See*

*Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (An "inmate claiming retaliation must

allege specific facts showing retaliation because of the exercise of the prisoner's constitutional

rights."); *Frazier v. Dubois*, 922 F.2d 560, 562, n.1 (10th Cir. 1990) (For this type of claim, "it is

imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of

constitutional retaliation will not suffice."); *Gallagher*, 587 F.3d at 1069 (The "denial of a

grievance, by itself without any connection to the violation of constitutional rights alleged by

plaintiff, does not establish personal participation under § 1983."); *Jones v. Greninger*, 188 F.3d

322, 325 (5th Cir. 1999) (Plaintiff "must allege more than his personal belief that he is the victim

of retaliation.").  Plaintiff therefore fails to adequately state a claim for retaliation.

### 4.  Due Process Claims

Plaintiff brings several claims of denial of his due process rights based on violations of

NMCD policies and grievance procedures.  In Claim 3 Plaintiff alleges he was not able to appeal

his transfer to a higher security level prison; in Claim 5 Plaintiff alleges Defendant Rivera did not

forward his appeal of his NMCD classification to the NMCD Cabinet Secretary;  in Claim 7

Plaintiff alleges Defendants Duran and Fairman failed to properly process the informal complaint

he filed regarding his transport to the Level 3 prison; and in Claim 10 Plaintiff alleges Defendant

Fairman improperly denied his grievances regarding claims relating to his mail.  ECF No. 11 at

28-29, 32-34, 39-40, 46-47.

As explained above, Plaintiff cannot maintain a constitutional claim for Defendants'

mishandling the prison grievance process.  *See Gaines*, 292 F.3d at 1225 (Alleged violations of

prison regulations are not cognizable under § 1983); *Hovater*, 1 F.3d at 1068 n.4 ("[A] failure to

adhere to administrative regulations does not equate to a constitutional violation.").  Moreover, a prisoner does not have a liberty interest in his or her classification and, therefore "[c]hanging a prisoner's classification does not deprive him of liberty under the due process clause."  *Sparks v. Foster*, 241 F. App'x 467, 471 (10th Cir. 2007); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.").  While a liberty interest may arise under the due process clause if the classification extends the length of an inmate's sentence or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Plaintiff does not allege that his transfer extended the length of his sentence or imposed atypical and significant hardship.  *Sandin*, 515 U.S. at 484; *see also Barlor v. Patton*, Case No. CIV-15-66-D, 2016 WL 1273246, at *4 (W.D. Okla. Mar. 31, 2016) ("Barlor's transfer to maximum security imprisonment does not present the type of atypical, significant deprivation in which there might conceivably be a liberty interest.").  Consequently, Plaintiff has not adequately stated a due process claim.

### 5.  Equal Protection, ADA/Rehabilitation Act, and Conspiracy Claims

In Claims 3 and 6, Plaintiff alleges several Defendants violated his equal protection rights by transferring him to the Level III prison when other prisoners with as much time to serve as Plaintiff were not transferred.  ECF No. 11 at 28-29, 37-38.  Plaintiff also makes several allegations that Defendants violated his equal protection rights and the ADA/Rehabilitation Act by discriminating against him on the basis of a medical condition.  *See id.* at 28-29 (Claim 3); 37-38 (Claim 6); 39-40 (Claim 7); 49-51 (Claim 12).

To state an equal protection claim, Plaintiff must allege that he has intentionally been treated differently than similarly situated individuals.  *See Barney v. Pulsipher*, 143 F.3d 1299,

1312 (10th Cir. 1998). Further, Plaintiff must allege facts plausibly showing that he is a member of a protected class, that he asserted a fundamental right, or that any distinction in his treatment compared to other prisoners' treatment was not reasonably related to a legitimate penological purpose. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). "[T]o prevail on his equal protection claim [the plaintiff] would have to prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotation marks omitted); *see also Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).

Plaintiff's Amended Complaint contains no facts to establish "above a speculative level" that Plaintiff was intentionally treated differently from others similarly situated to him. *Twombly*, 550 U.S. at 555. Plaintiff does not allege any facts that Defendants intentionally treated him differently from other inmates, or that his treatment was not related to a legitimate penological interest. Plaintiff also does not specify what his medical condition is or that Defendants were aware of it. Accordingly, "[Plaintiff's] allegations are merely conclusory in that they do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims." *Brown*, 63 F.3d at 972; *see also Bd. of Tr. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational."). Plaintiff therefore fails to state a cognizable equal protection claim.

The ADA prohibits discrimination based on disability in the availability of a public entity's services, programs, or activities. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). In

order to state a cognizable claim under the ADA, Plaintiff must allege facts that demonstrate "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007); *Simon v. Burtlow*, Civil Action No. 21-cv-00723-GPG, 2021 WL 11690705, at *3 (D. Colo.). Plaintiff claims Defendants violated the ADA by transferring him to a Level III prison and by housing him in a dorm with younger prisoners despite his medical conditions. ECF No. 11 at 39-40 (Claim 7); 49-51 (Claim 12). However, Plaintiff does not allege any facts that demonstrate he qualifies as having a disability within the meaning of the ADA. *See* 42 U.S.C. § 12102(2) (providing the ADA extends to "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."). Moreover, Plaintiff does not allege that he was denied the benefits of services, programs, or activities by reason of his disability. Hence, Plaintiff fails to state an ADA claim.

Plaintiff also appears to allege that three Defendants conspired to transfer him to the Level III prison. ECF No. 11 at 35 (Claim 6). "Allegations of conspiracy may, indeed, form the basis of a § 1983 claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). But "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Id.* "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). Here, Plaintiff makes only one conclusory statement referencing the alleged conspiracy: "Defendants [Sanchez, De Herrera, and De La Cruz] conspired among themselves to remove the Plaintiff from the Senior Living Program and transferred from the Level II Geriatrics Facility to a Level III prison."). ECF No. 11 at 35. The Amended Complaint contains no specific allegations of an agreement or

concerted action between Defendants.  Accordingly, Plaintiff fails to state a conspiracy claim under § 1983.

### 6.  Eighth Amendment Claims

Plaintiff brings at least five claims that Defendants violated his Eighth Amendment rights. In Claim 2, he alleges Defendant Sanchez yelled at him and potentially exposed him to Covid; in Claims 4 and 7, he alleges seven Defendants transported him to and from the Level III prison despite his chronic medical condition and in dangerous circumstances; in Claim 8 he alleges two Defendants failed to clean his cell and failed to provide him medications; and in Claim 12 he alleges he was housed in a dorm with younger inmates who were noisy, used drugs, and smoked. ECF No. 11 at 25-26; 29-31; 37-42; 48-51.

The Eighth Amendment is violated if prison officials act with deliberate indifference to an inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825 (1994).  "A claim of deliberate indifference includes both an objective and a subjective component."  *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014).  Under the objective prong "extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Farmer*, 511 U.S. at 834 (explaining that a plaintiff must demonstrate that the infringement was sufficiently serious).  Thus, the Eighth Amendment is not violated unless the conditions deprive a prisoner of "'the minimal civilized measure of life's necessities.'"  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Under the subjective prong, "a prison official may be held liable ... only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  Simple negligence and even gross negligence are not sufficient

to support an Eighth Amendment claim. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990).

First, Plaintiff's allegations that he was yelled at, "potentially" exposed to Covid, and housed with younger inmates do not appear to constitute conditions "so severe as to pose a substantial risk of serious harm." *Rocha v. CCCF Admin*, 408 F. App'x 141, 144 (10th Cir. 2011); *see Despain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) ("An inmate is required to "show that conditions were more than uncomfortable;" they must "instead … [impact] health or safety."); *More v. Morris*, 116 F. App'x 203, 205 (10th Cir. 2004) (verbal taunting and harassment do not implicate the protections of the Eighth Amendment).  Second, to the extent Plaintiff satisfies the objective component, he fails to allege facts showing that any Defendant knew his or her actions posed a risk of harm to Plaintiff.  The Amended Complaint contains no "evidence of [each individual] prison official's culpable state of mind" and, therefore, fails to satisfy the subjective element.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *see Farmer*, 511 U.S. at 837 (Each defendant must "know[] of and disregard[] an excessive risk to inmate … safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Additionally, to the extent Plaintiff seeks to hold prison officials vicariously liable for Eighth Amendment violations, such claims fail because prison supervisors cannot be held vicariously liable for their employee's alleged constitutional violations under § 1983.  *See Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018).  To establish liability under § 1983, a plaintiff must show the supervisor "(1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy that ... caused the complained of constitutional harm, and (2) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*  Plaintiff

has not alleged any wrongdoing is traceable to a policy any Defendant was responsible for, or that any Defendant acted with a culpable state of mind.  For these reasons, the Complaint fails to state a § 1983 claim for deliberate indifference against any Defendant.

### 7.    Mail and Book Policy Claims

Plaintiff raises three claims regarding the prison's book and mail policies.  In Claim 9 he alleges five Defendants violated his rights under the First Amendment by rejecting a religious newsletter; in Claim 10 he alleges seven Defendants violated his constitutional rights by requiring books, magazines, and newsletters to be sent through a digital mail service; and in Claim 11 he claims three Defendants improperly opened his legal mail.  ECF No. 11 at 42-48.

Regarding the newsletter and book claims, "[i]nmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison."  *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004).  This includes the right to receive books, under certain circumstances.  *See, e.g., Whitehead v. Marcantel*, 766 F. App'x 691, 696 (10th Cir. 2019); *Khan v. Barela*, 2020 WL 1488762, at *3 (10th Cir. Mar. 26, 2020).  Courts generally apply a four-factor test to determine whether the restriction on books is reasonably related to legitimate penological interests.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (establishing the test).  The factors are:

> (1) whether a rational connection exists between the prison policy [or] regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (citing *Turner*, 482 U.S. at 89-91).

A full "analysis of the *Turner* factors is unnecessary at the pleading stage." *Al-Owhali v.*

*Holder*, 687 F.3d 1236, 1240 n. 2 (10th Cir. 2012). However, "[an inmate] must include sufficient

facts to indicate the plausibility that the actions of which he complains were not reasonably related

to legitimate penological interests." *Khan*, 2020 WL 1488762, at *3 (quoting *Gee*, 627 F.3d at

1187-88). Doing so might require the inmate to "recite[] facts that might well be unnecessary in

other contexts. For example, ... a [First Amendment] claim may not be plausible unless it alleges

facts that explain why the usual justifications for the complained-of acts do not apply." *Gee*, 627

F.3d at 1185.

Plaintiff states the newsletter was rejected based on policies regarding the inclusion of

colored paper and use of approved vendors, and states "there is no legitimate or lawful

justification" for the mail policy requiring mail to be sent through a digital mail service. ECF No.

11 at 43, 45. However, Plaintiff does not allege any facts "that explain why the usual justifications

for the complained-of acts do not apply." *Gee*, 627 F.3d at 1185; *see also Jones v. Salt Lake Cnty*.,

503 F.3d 1147, 1157 (10th Cir. 2007) (upholding policy that only permits prisoners to obtain books

from the publisher, given the "obvious security problem" of "books … be[ing] used to smuggle

contraband into the prison"). Accordingly, Plaintiff does not allege facts that indicate Defendants'

alleged actions were not based on a legitimate penological interest.

Plaintiff also claims that on two occasions—in 2021 and 2022—Defendants opened his

legal mail without Plaintiff being present. ECF No. 11 at 47-48. Plaintiff received a receipt for

the first instance stating: "Opened accidentally: came in security envelope." *Id.* at 47. The second

time, Plaintiff received a receipt stating: "Opened to verify from law firm was sender [sic]." *Id.*

The Tenth Circuit has held that where prison officials opened one piece of constitutionally

protected mail by accident, "[s]uch an isolated incident, without any evidence of improper motive

or resulting interference with [the inmate's] right ... of access to the courts, does not give rise to a constitutional violation." *Florence v. Booker*, 23 F. App'x 970, 972 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).  Likewise, district courts have applied that standard where plaintiffs alleged multiple isolated incidents of jail officials opening legal mail. *See, e.g., Thompson v. Hooper*, 2006 WL 1128692, at *4 (D. Kan. April 25, 2006) (holding plaintiff must "show either an improper motivation by defendants or denial of access to the courts" to state a constitutional violation for opening legal mail); *Elrod v. Swanson*, 478 F. Supp. 2d 1252, 1275 (D. Kan. 2007) (plaintiff could not show injury from alleged opening of legal mail where plaintiff did not argue interference with communication with counsel and did not show anything more than an inadvertent mistake by prison officials).  Plaintiff here does not make any allegations of improper motive or resulting interference with his right of access to the courts or communication with counsel.  Therefore, Plaintiff does not state a constitutional violation regarding his legal mail.

### 8.  Access to the Courts

Plaintiff's final claim is that he was unable to timely file his amended complaint in Case No. 22cv570 because he was unable to obtain photocopying services or assistance from prison administrative staff.  ECF No. 11 at 51-53.  He claims he was thus denied access to the courts. Prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977), *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996).  To have standing to raise a claim of denial of access to the courts, however, a prisoner must demonstrate actual injury.  *Lewis*, 518 U.S. at 350-51; *see also Trujillo*, 465 F.3d at 1226 ("To state a claim for denial of such a right, [plaintiff] must show that any denial or delay of access to the court prejudiced him in pursuing litigation."); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must

allege and prove prejudice arising from Defendants' actions."); *Smith v. Maschner*, 899 F.2d at 944 (an inmate alleging interference with legal access must allege specific facts showing that a "distinct and palpable" injury resulted from defendants' conduct.).  An inmate may demonstrate actual injury by showing that he was unable to bring "contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356.  Here, Plaintiff was able to file his Amended Complaint in this proceeding and have his claims considered by the Court.  Plaintiff cannot demonstrate actual injury by the alleged delays and, therefore, lacks standing to assert this claim.  *See Lewis*, 518 U.S. at 349 (explaining that the actual injury requirement is a component of constitutional standing).

## IV.    Plaintiff May File an Amended Complaint

Based on the foregoing, the Court will dismiss the Amended Complaint ECF No. 11 without prejudice for failure to conform to Rule 8(a) and for failure to state a cognizable claim under Rule 12(b)(6).  The Tenth Circuit counsels that *pro se* plaintiffs should ordinarily be given an opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990).  Plaintiff may file a single amended complaint on the proper form § 1983 complaint within thirty (30) days of entry of this Order.  The amendment must not exceed 30 pages in length.  Plaintiff is reminded that the amendment must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1249-50 (emphasis in original).  "Collective allegations" regarding the alleged wrongdoing will not meet this standard. *Id.*  Plaintiff is further reminded that if he wishes to name an entity or a prison supervisor, such defendants cannot be liable under § 1983 for the actions of their employees.  *See Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 877 (10th Cir. 1993); *see also Monell v. Dep't of Soc. Servs. of*

*N.Y.*, 436 U.S. 658, 694 (1978).   The allegations must show the entity or prison supervisor is responsible for a policy or custom that caused the constitutional violation.  *See Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir. 1996); *Brown v. Montoya*, 662 F.3d 1152, 1164-65 (10th Cir. 2011). Plaintiff is finally advised that any amendment will supersede the Amended Complaint and must include all federal and state claims he wishes to pursue in this case.  If Plaintiff fails to timely amend his complaint as set forth above, the Court may dismiss all federal § 1983 claims with or without prejudice; decline to exercise supplemental jurisdiction over any state law claims; and dismiss all state law claims without prejudice for lack of jurisdiction.

   **IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion to Correct Case Number (**ECF No. 5**), Motion for Extension of Payment (**ECF No. 6**), and Motion Regarding Filing Fee (**ECF No. 7**), are **DENIED as moot**;

2. Plaintiff's Motion for Leave to File an Amended Complaint (**ECF No. 11**) is **GRANTED**;

3. Plaintiff's Amended Prisoner's Civil Rights Complaint (**ECF No. 11**) at pages 2-54 is **DISMISSED without prejudice**;

4. Plaintiff is granted leave to file a second amended complaint within thirty (30) days of the entry of this Memorandum Opinion and Order;

5. The Clerk's Office shall **MAIL** Plaintiff a form § 1983 complaint; and

6. Failure to timely comply with this Memorandum Opinion and Order may result in dismissal of this action without further notice.

_____

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE